Mario Iskander, SBN #327025
JUSTICE LAW GROUP
931 N Vignes Street,
Ste. 204, Los Angeles,  CA 90012
Tel (240) 439-1970
Email: mario@iskanderlaw.com

Attorney for Plaintiffs,  VALOR SYSTEMS, INC. and MICHAEL MAI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALOR SYSTEMS, INC. and MICHAEL MAI,<br><br>                    Plaintiff,<br><br>v.<br><br>TRANSX SYSTEMS, INC.;  HUNG TRAN; and JAMES C. KALLIMANI,<br><br>                    Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS, FRAUD AND R.I.C.O. |

Plaintiffs VALOR SYSTEMS, INC. and MICHAEL MAI complains and allege as follows:

### I.        INTRODUCTION

1.        This case involves a securities offering in a concert festival scheme promoted through false and misleading representations by the Defendants, HUNG TRAN (" Tran"), and his company Defendant, TRANSX SYSTEMS, INC , ("TransX"). The scheme commenced in September 2023 and continued through February 2024. Hung preyed on family and friends.

Hung induced Plaintiffs, MICHAEL MAI ("Mai") and VALOR SYSTEMS, INC. ("VSI") to invest more than Four Hundred thousand dollars ("$400,000) in the scheme by (i) making material misrepresentations and omissions of material facts concerning the risks, profits, structure, and terms of the investments (ii) creating documents that fraudulently inflated key financial metrics, including revenue and income; and (iii) touting "exclusive,"—but, in fact, nonexistent— relationships with artists and talent connected to the concert promotion scheme. Defendants Tran and TransX used false income statements and pro formas and provided other false financial information to prospective investors. Defendant Hung misstated his relationships to artists, artist agents, and televised streaming companies and his management experience and expertise. The victims relied on the materially false and misleading statements and document to make their investment decisions.

2. Beginning in September 2023 Defendant Tran received money, benefits, and benefits using the Plaintiff's funds which enabled him to live an extravagant lifestyle, including luxury rental and hotel accommodations, rental vehicles, and vacations..

3. By engaging in the conduct described herein:

A. Defendants Tran and TransX violated Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5].

B. Defendant Hung and TransX violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e].

C. Defendants, Hung and TransX committed fraud, all as alleged more particularly hereinbelow.

## I.  **PARTIES**

4. Plaintiff, MICHAEL MAI is an individual who resides in the County of Riverside, California within the Central District of California.

5.      Plaintiff, VALOR SYSTEMS, INC is a Corporation organized and existing under the laws of the State of Texas with its principal place of business in the City of Canyon Lake, California.

6.      Defendant, TRANSX SYSTEMS, INC. is a Corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

7.      Defendant,  HUNG TRAN is an individual residing in Cook County, Illinois and was at all relevant times mentioned the office, director and controlling shareholder of Defendant TRANSX SYSTEMS, INC.

8.      Defendant, JAMES C. KALLIMANI is an  individual residing in Travis County, Texas.

9.      At all relevant times alleged herein, each Defendant functioned as an agent, servant, employee, and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment,  or joint venture. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Defendants.

## II. JURISDICTION AND VENUE

10.      This Court has federal question jurisdiction pursuant to  28 U.S.C. § 1331 based on the defendants' violations of  §§ 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11.      Venue is proper in the Central District of California pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Central  District of California.

12.      Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

13.     certain of the acts, practices, transactions, and courses of business constituting the violations alleged in this Complaint occurred here and were effected, directly or indirectly, by making the use of means or instrumentalities of transportation or communication in interstate commerce, or the mails.

### III.  THE FRAUDULENT SCHEME

14.     Commencing in September 2023, Defendant Hung Tran ("Tran") approached Plaintiff MICHAEL MAI ("Mai") and his corporation VALOR SYSTEMS INC ("VSI") (collectively "Plaintiffs") promoting a business opportunity based on TransX and his winning multiple bids for premier online streaming contracts for top artists, including Drake, Burna Boy and boxing events in South Africa.  Defendant Tran represented that TransX, and he secured an exclusive partnership with AT&T for streaming concerts and athletic events. Tran was an acquaintance of Mai from years ago when Mai was growing up in the State of Illinois.

15.     After Tran promoted the lucrative potential of his streaming business opportunities in a number of telephone calls, Tran called Mai again on October 9, 2023 to offer a specific investment opportunity.   Defendant Tran represented to Mai that he had secured rights to a music festival held annually in the Bahamas know as the Spilligate Festival to be headlined by Burna Boy, a Nigerian a musician, (who had grown famous internationally popularizing Afrobeats music, a fusion of R&B, hip hop, dancehall, and reggae), including streaming rights.

16.     Defendant Tran solicited a cash investment from Plaintiffs in in an unregistered security offering which he termed an "Investment Contract" concerning the Burna Boy concert. The Investment Contract granted Plaintiffs a right to Fifteen Percent (15%) of the profits derived from the concert's commercial enterprises.    On October **12, 2023,** Defendant Tran requested an investment of $1,000,000 from Plaintiffs and provided his wiring instructions. Attached hereto as **Exhibit "1"** is an email from Defendant, Tran providing wire instructions and requesting $1 Million Dollars from Plaintiffs.

17.     On October 24, 2023,  Defendant, Tran sent a spreadsheet to  Plaintiffs showing prospective income in excess of $12 Million in revenues from the concert including $4 Million from streaming the concert live.   True and correct copies of  Defendant, Tran's email and summary worksheet attached showing the anticipated revenues and expenses for the Burna Boy concert are attached collectively as **Exhibit "2".**

18.     On or about October 27, 2023,  Plaintiff, Mai was presented with an Investment Contract from Defendant, Tran for the Burna Boy concert.  According to the terms, Mai was to invest $500,000 and in return receive 15% of the concert profits.  Plaintiff, Mai and Defendant Tran executed the Investment Contract. A true and correct copy of the executed Investment Contract is attached as **Exhibit "3'.**

19.     Plaintiff Mai, individually and through his company, VSI, began to send the cash under the Investment Contract by wire transfer TransX, Defendant, Tran's company. Plaintiff, Mai unaware of the false claims and false statements. Plaintiff signed the investment agreement with Defendant Hung and started wire investment money to Hung Tran's company account. Between October 27, 2023 and November 13, 2023, Plaintiffs wired $406,000 to Defendant, TransX as part of their investment in the Burna Boy Concert.  Attached hereto as **Exhibit "4**", is a schedule showing the dates and amounts of the funds transferred to  Defendants.

20.      At all relevant times mentioned herein, Defendant Tran acted as an unregistered broker-dealer and raised $406,000 from Plaintiffs. The funds were invested with Defendant TransX for the  Burna Boy Concert Investment Contract - offering. Defendant Tran created, authored, oversaw and controlled all of the materials presented to investors in connection with funds solicitation. Defendant, Tran personally directed the sales and solicited potential investors either in-person, by phone, by email, or text message.

21.     Defendant Tran personally advised Plaintiffs on the merits of the investment. Defendant Tran promoted the scheme by promising large expected profits the investment opportunity and promised further opportunities to Plaintiffs if they invested in the Burna Boy Concert based on Defendant TransX's  alleged exclusive contracts with mega stars. Defendant

Tran exercised control over the investor's funds received and was the signatory of the TransX bank accounts that he opened and into which investor funds were deposited. Defendant Tran engaged in the business of effecting transactions in securities for the accounts of others without registering as a broker-dealer and without qualifying for any exemption.

22.    In financial documents and communications presented to Plaintiffs in connection with the Burna Boy Concert:

a)    Defendant Tran  falsely stated financial metrics, including but not limited to $4 Million in revenue would be received from streaming the concert event when in fact TransX had no contracts with any streaming services and no factual foundation to project this revenue stream.

b)    Defendant, Tran presented cash flow statements which showed that Plaintiffs would make $1,567,500 from their $500,000 investment which projection and later updated to $1,8675,000 when in fact TransX did not have a direct contract to promote the Spilligate Festival or with any artists.

c)    Defendants, TransX and Tran. represented that they had affiliations with artists, talent agencies, and multinational media corporations when in fact they had no such relationships.  Defendant, James C. Kallimani was introduced to Plaintiffs by Defendant, Tran as an experienced financial advisor and consultant to Defendants, Tran and TransX  Defendant, Kallimani  vouched for the integrity of the investment with Defendants, Tran and TransX and  repeated the representations of Tran and TransX concerning the concert scheme.

d)    Defendants, Tran and TransX represented that Plaintiffs' investment funds would be used to pay the advances required by Burna Boy to appear at the Spilligate Festival and the expenses for live streaming the concert, including fees of AT&T and a credit card processor when in fact Defendant, Tran used approximately one half of the investor funds as a  commission payable to himself without disclosure and paid approximately one half of the funds to a  an agency claiming to represent Burna Boy.

---

e)        Defendant, Tran repeatedly told Plaintiffs that their investment would be extremely safe given the large expected ticket sales for Burna Boy appearing at the Spilligate Festival and that Defendant Tran would personally guarantee return of all of their investment funds when in fact the investment was extremely risky because Defendant, Tran had not secured any streaming contracts and was in negotiations with the actual concert promoter who did not have the funds to pay for Burna Boy's appearance at the festival and Trans did not have adequate net worth or liquid funds to guarantee return of Plaintiff's investment.

### FIRST CLAIM FOR RELIEF

### (Fraud in Violation of §10(b) of the Exchange Act and

### Rules 10b-5(a), (b), and (c) against all Defendants)

230.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 22, inclusive as though fully set forth herein.

24.    Commencing in September 2023 and continuing through February 2024, , Defendants Tran and TransX, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, have been, knowingly, willfully or recklessly: (a) employing devices, schemes or artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaging in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

25.    During the aforesaid period, Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in that they contained misrepresentations and failed to disclose material facts

---

**Complaint**                                                                    **7**

necessary in order to make the statements made, in light of the circumstances under which they were made, misleading.

26.    Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. The Defendants engaged in this misconduct to conceal the true facts from Plaintiffs in order to induce them to provide them with investment funds.

27.    Plaintiffs suffered damages in that, in reliance on Defendants' statements, they paid $406,000 to Defendants for a percentage of the profits of the Burna Boy Concert and Plaintiffs would not have entered into the Investment Contract at all, had they been aware of the true facts.

28.    As a direct and proximate result of defendants' wrongful conduct, Plaintiffs suffered damages in connection with their investment having paid $406,000 to Defendants shares during the aforesaid period.

29.    By reason of the foregoing, Defendants Tran and TransX, directly or indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240. 10b-5, thereunder.

30.    By engaging in the foregoing conduct Defendants violated, and unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act and Rules 10b-5(a), (b), and (c) thereunder.

## SECOND CLAIM FOR RELIEF

### (Sale of Unregistered Securities in Violation of Sections

### 5(a) and 5(c) of the Securities Act against all Defendants)

31.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 22, inclusive, and 24 through 30, inclusive, as though fully set forth herein.

32.    No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions issued by Defendants described

in this Complaint, and no exemption from registration—including the Rule 3a4-1 safe harbor—applies with respect to these securities and transactions.

33.    Commencing in September 2023 and continuing through February 2024, as a result of the conduct alleged in this Complaint, Defendants its officers, directors, employees, subsidiaries, and/or affiliates, directly or indirectly:

  a)    made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, prospectus, oral and written statements or otherwise, securities as to which no registration statement was in effect; and/or

  b)    made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the Commission as to such securities.

34.    Defendants directly or indirectly offered or sold securities in unregistered nonexempt transactions in interstate commerce.

35.    By reason of the foregoing, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act  and Securities Act Section 12(a)(1),  (15 U.S.C. § 77l(a)(1))

**THIRD CLAIM FOR RELIEF**

**(Fraud against all Defendants)**

36.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 22, inclusive,  24 through 30, inclusive,  and 32 through 35, inclusive, inclusive, as though fully set forth herein.

37.    Commencing in September 2023 and continuing through February 2024, , Defendants Tran and TransX, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as

described in this Complaint, have been, knowingly, willfully or recklessly: (a) employing devices, schemes or artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaging in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities as alleged hereinabove.

38.     Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. The Defendants engaged in this misconduct to conceal the true facts from Plaintiffs in order to induce them to provide them with investment funds.

40.     Plaintiffs suffered damages in that, in reliance on the statements of the Defendants regarding the business opportunity, they paid $406,000 to Defendants for a percentage of the profits of the Burna Boy Concert and Plaintiffs would not have entered into the Investment Contract at all, had they been aware of the true facts.

41.     As a direct and proximate result of defendants' wrongful conduct, Plaintiffs suffered damages in connection with their investment having paid $406,000 to Defendants shares during the aforesaid period.

42.     Defendants despicable conduct alleged hereinabove was in conscious disregard of the rights of the plaintiffs and performed intentionally, fraudulently and maliciously. Plaintiffs are entitled to an award of punitive damages.

## FOURTH  CLAIM FOR RELIEF
(Violation of R.I.C.O. (18 U.S.C. § 1962(c))
Against All Defendants)

43.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 2219, )inclusive,  241 through 3029, inclusive,  and 321 through 353, inclusive,  and 37 through 42, inclusive, as though fully set forth herein.

44.     Defendants, Tran, TransX and Kallimani, are in fact an "enterprise" as that term is defined in 18 U.S.C. § 1961(4),associated for the common purpose of profiting off of the collection on unlawful debt and engaging in a pattern of racketeering activity .

45.     The Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

46.     Defendants violated  the Racketeering and Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C.  § 1962(c), by participating, directly or indirectly, in the conduct of the Enterprise's affairs by a plan or scheme to defraud in a concert promotion scheme.

47.     R.I.C.O. defines "racketeering activity" as acts which, among other crimes, constitute mail fraud (18 U.S.C.A. § 1341) and wire fraud (18 U.S.C.A. § 1343).

48.     Defendants have engaged in racketeering activities by promoting a concert through false representations of having streaming rights and promoter rights to the Spilligate Festival in the Bahamas headlined by Burna Boy in violation of the federal mail fraud and wire fraud statutes.

49.     Plaintiffs were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the investment of $406,000 paid the  Enterprise and payment of attorney's fees to prosecute this action and other actions to recover the investment funds which were not expended as represented on an opportunity that was misrepresented.

50.     Defendants' unlawful conduct began at the latest in September 2023 and continues to date, and will be repeated again, and again in the future to the detriment of Plaintiffs and other prospective investors solicited by the Defendants.

51.     Accordingly,  Defendants, and each of them,  are jointly and severally liable to Plaintiffs for his actual damages, treble damages, costs, and attorneys' fees,  pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Michael Mai and Valor Systems, Inc. respectfully request that the Court enter a Final Judgment:

1.      Finding that Defendants violated Sections 17(a)(1), (2), and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a), (b), and (c) thereunder and permanently restraining and enjoining Defendants and all persons in active concert or participation with them from violating the foregoing statutes and rules;

2.      Finding that Defendants violated Sections 5(a) and 5(c) of the Securities Act and permanently restraining and enjoining Defendants and all persons in active concert or participation with them from violating the foregoing statutes;

3.      Finding that Defendant Hung is liable for violating Section 15(a) of the Exchange Act and permanently restraining and enjoining Defendant Hung and all persons in active concert or participation with him from violating the foregoing statute;

4.      Issuing an Order temporarily freezing the assets of Defendants Tran and TransX Systems, Inc. and requiring accountings by Defendants  Tran and TransX Systems, Inc..

5.      Permanently restraining and enjoining Defendants Tran and TransX Systems, Inc.—directly or indirectly, including, but not limited to, through any entity he owns or controls—from participating in the issuance, offer, or sale of any security;

6.      Ordering Defendants to disgorge all ill-gotten gains obtained and illegal losses avoided as a result of the acts or courses of conduct alleged in this Complaint

7.      For an award of prejudgment interest on all sums ordered to be disgorged;

8.      For compensatory damages in an amount to be determined by the trier of fact.

9.      For treble damages pursuant to 18 U.S.C. § 1964(c).;

10.     For an award of punitive damages;

11.     For an award of costs of suit including attorney fees;

12.     For such other and further equitable, declaratory and injunctive relief as deemed necessary and just.

1

2                                  **JURY DEMAND**

3    Under Rule 38 of the Federal Rules of Civil procedure, the Plaintiff demands trial by Jury.

4

5    Date: February 13, 2024                    *s/ Mario Iskander*

6                                               Mario Iskander, Esq.
                                                attorney for Plaintiffs,
7                                               VALOR SYSTEMS, INC.
                                                and MICHAEL MAI
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**Complaint**                                                          **13**

# EXHIBIT "1"



**Michael Mai <mmai2004@gmail.com>**

---

## Bank Information
1 message

---

**Hung Tran** <hung.tran@transxsystems.com>                                        Thu, Oct 12, 2023 at 6:44 PM
To: Michael Mai <mmai2004@gmail.com>

Quang,

Below is the wiring instruction.

Bank:  Chase

Company:  TransX Systems, Inc.

Routing Number:  071000013

Account Number:  449224935

I talked with Erica and Levar today on making my company, TransX Systems, being the guarantor for your and your friends' investment in this concert.  They are comfortable with that arrangement.  If you have a "guarantor" document, send it to me to review and sign.  If you don't have one, I will ask my attorney if he has one that we can use.

BTW, how much can you and your friend invest, if my company is the guarantor of your investment?  If you two can increase the amount to $1 million, that would give you more control over this concert, especially when your principle will be guaranteed by my company.

Regards,

Hung

CEO
*TransX Systems, Inc.*
475 North Martingale Road, Suite 360
Schaumburg, IL 60173
713-456-0399
hung.tran@transxsystems.com

# EXHIBIT "2"

## Burnaboy - 8 Week Cash Flow Forecast

| Week and Date | Pre-Start | Wk 1 - Oct 23rd | Wk 2 - Oct 30 | Wk 3 - Nov 6 | Wk 4 - Nov 13 | Wk 5 - Nov 20 | Wk 6 - Nov 27 | Wk 7 - Dec 4 | Wk 8 - Dec 11 | Wk 9 - Dec 17 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inflows** | | | | | | | | | | | |
| Cash Investment - Lavar | $500,000 | | | | | | | | | | **$500,000** |
| Cash Investments - Others | | | | $1,000,000 | | | | | | | **$1,000,000** |
| Cash Proceeds - Lavar's Concert | | | | $2,000,000 | | | | | | | **$2,000,000** |
| Revenue From Box Office Ticket Sale | | $0 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | | **$5,450,000** |
| Revenue From Livestream Ticket Sale | | | | | | | | | | $4,000,000 | **$4,000,000** |
| **Total Inflows** | **500,000** | **-** | **778,571** | **3,778,571** | **778,571** | **778,571** | **778,571** | **778,571** | **778,571** | **4,000,000** | **$12,950,000** |
| **Outflows** | | | | | | | | | | | |
| AT&T Deposits | | $150,000 | | | | | | | | | **$150,000** |
| Livestreaming Deposit | | $75,000 | | | | | | | | | **$75,000** |
| AT&T Livestream Broadcast Fee | | | | | | | | | | $160,000 | **$160,000** |
| Livestreaming Ticket Sales & Broadcast Hosting Fee | | | | | | | | | $885,000 | | **$885,000** |
| Artists | | $500,000 | | | $500,000 | | | | | | **$1,000,000** |
| Artist Fee Compliment | | $1,000,000 | | | | | | | | | **$1,000,000** |
| Finder's Fee | | | | $100,000 | | | | | | | **$100,000** |
| Venue | | | | $80,000 | | | | | | | **$80,000** |
| Production Fees | | | | $400,000 | | | | | | | **$400,000** |
| Set Design Fees | | | $200,000 | | | | | | | | **$200,000** |
| E Ticket Platform Fee ( Box Office ) | | $75,000 | | | | | | | | | **$75,000** |
| Streaming Services | | $150,000 | | | | | | | | | **$150,000** |
| Decorations | | $20,000 | | | | | | | | | **$20,000** |
| Management | | $15,000 | | | | | | | | | **$15,000** |
| Marketing | | $268,569 | | | | | | | | | **$268,569** |
| Staff | | $20,000 | | | | | | | | | **$20,000** |
| Police and Security | | | | | $40,000 | | | | | | **$40,000** |
| Government Fees | | $75,000 | | | | | | | | | **$75,000** |
| Public Relations and Publication | | $10,000 | | | | | | | | | **$10,000** |
| Artist Backstage Dressing Room | | | | | | | | $60,000 | | | **$60,000** |
| Professional Fees | | $3,000 | | | | | | | | | **$3,000** |
| Miscellaneous | | | $200,000 | | | | | | | | **$200,000** |
| **Total Outflows** | **-** | **2,361,569** | **400,000** | **580,000** | **540,000** | **-** | **-** | **60,000** | **-** | **1,045,000** | **$4,986,569** |
| **Cashflow surplus (deficit)** | **500,000** | **($2,361,569)** | **$378,571** | **$3,198,571** | **$238,571** | **$778,571** | **$778,571** | **$718,571** | **$778,571** | **$2,955,000** | **$7,963,431** |
| **Opening Cash Balance** | **-** | **$500,000** | **($1,861,569)** | **($1,482,998)** | **$1,715,574** | **$1,954,145** | **$2,732,717** | **$3,511,288** | **$4,229,860** | **$5,008,431** | |
| **Closing Cash Balance** | **500,000** | **($1,861,569)** | **($1,482,998)** | **$1,715,574** | **$1,954,145** | **$2,732,717** | **$3,511,288** | **$4,229,860** | **$5,008,431** | **$7,963,431** | |

## Burnaboy - 8 Week Cash Flow Forecast

| Week and Date | Pre-Start | Wk 1 - Oct 23rd | Wk 2 - Oct 30 | Wk 3 - Nov 6 | Wk 4 - Nov 13 | Wk 5 - Nov 20 | Wk 6 - Nov 27 | Wk 7 - Dec 4 | Wk 8 - Dec 11 | Wk 9 - Dec 17 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inflows** | | | | | | | | | | | |
| Cash Investment - Lavar | $500,000 | | | | | | | | | | $500,000 |
| Cash Investments - Others | | | $500,000 | $500,000 | | | | | | | $1,000,000 |
| Cash Proceeds - Lavar's Concert | | | | $2,000,000 | | | | | | | $2,000,000 |
| Revenue From Box Office Ticket Sale | | $0 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | | $5,450,000 |
| Revenue From Livestream Ticket Sale | | | | | | | | | | $4,000,000 | $4,000,000 |
| **Total Inflows** | **500,000** | **-** | **1,278,571** | **3,278,571** | **778,571** | **778,571** | **778,571** | **778,571** | **778,571** | **4,000,000** | **12,950,000** |
| **Outflows** | | | | | | | | | | | |
| AT&T Deposits | | $75,000 | $75,000 | | | | | | | | $150,000 |
| Livestreaming Deposit | | $40,000 | $35,000 | | | | | | | | $75,000 |
| AT&T Livestream Broadcast Fee | | | | | | | | | $160,000 | | $160,000 |
| Livestreaming Ticket Sales & Broadcast Hosting Fee | | | | | | | | | $885,000 | | $885,000 |
| Artists | | $500,000 | | | $500,000 | | | | | | $1,000,000 |
| Artist Fee Compliment | | | $300,000 | $300,000 | $400,000 | | | | | | $1,000,000 |
| Finder's Fee | | | | $100,000 | | | | | | | $100,000 |
| Venue | | | | $80,000 | | | | | | | $80,000 |
| Production Fees | | | | $400,000 | | | | | | | $400,000 |
| Set Design Fees | | | $200,000 | | | | | | | | $200,000 |
| E Ticket Platform Fee ( Box Office ) | | $75,000 | | | | | | | | | $75,000 |
| Streaming Services | | $150,000 | | | | | | | | | $150,000 |
| Decorations | | $20,000 | | | | | | | | | $20,000 |
| Management | | $15,000 | | | | | | | | | $15,000 |
| Marketing | | $50,000 | $100,000 | $100,000 | $18,569 | | | | | | $268,569 |
| Staff | | $20,000 | | | | | | | | | $20,000 |
| Police and Security | | | | | $40,000 | | | | | | $40,000 |
| Government Fees | | $75,000 | | | | | | | | | $75,000 |
| Public Relations and Publication | | $10,000 | | | | | | | | | $10,000 |
| Artist Backstage Dressing Room | | | | | | | | $60,000 | | | $60,000 |
| Professional Fees | | $3,000 | | | | | | | | | $3,000 |
| Miscellaneous | | | $200,000 | | | | | | | | $200,000 |
| **Total Outflows** | **-** | **1,033,000** | **910,000** | **980,000** | **958,569** | **-** | **-** | **60,000** | **-** | **1,045,000** | **4,986,569** |
| **Cashflow surplus (deficit)** | **500,000** | **($1,033,000)** | **$368,571** | **$2,298,571** | **($179,998)** | **$778,571** | **$778,571** | **$718,571** | **$778,571** | **$2,955,000** | **$7,963,431** |
| **Opening Cash Balance** | **-** | **$500,000** | **($533,000)** | **($164,429)** | **$2,134,143** | **$1,954,145** | **$2,732,717** | **$3,511,288** | **$4,229,860** | **$5,008,431** | |
| **Closing Cash Balance** | **500,000** | **($533,000)** | **($164,429)** | **$2,134,143** | **$1,954,145** | **$2,732,717** | **$3,511,288** | **$4,229,860** | **$5,008,431** | **$7,963,431** | |

| Ticket Type | Price | Total # Of Tickets | Potential Revenue |
|---|---|---|---|
| **In-Venue** | | | |
| General Admission | $150 | 8,000 | $1,200,000 |
| VIP | $250 | 12,000 | $3,000,000 |
| All Access | $350 | 5,000 | $1,750,000 |
| Sky Box | $10,000 | 20 | $200,000 |
| Pods | $5,000 | 20 | $100,000 |
| **Livestream/Online** | | | |
| Livestream | $40 | 100,000 | $4,000,000 |
| | | | |
| **TOTAL** | | | **$10,250,000** |

**Subtotal**  $6,250,000

**Subtotal**  $4,000,000

## Burnaboy - 8 Week Cash Flow Forecast

| Week and Date | Pre-Start | Wk 1 - Oct 23rd | Wk 2 - Oct 30 | Wk 3 - Nov 6 | Wk 4 - Nov 13 | Wk 5 - Nov 20 | Wk 6 - Nov 27 | Wk 7 - Dec 4 | Wk 8 - Dec 11 | Wk 9 - Dec 17 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inflows** | | | | | | | | | | | |
| Cash Investment - Lavar | $500,000 | | | | | | | | | | $500,000 |
| Cash Investments - Others | | $0 | $500,000 | | | | | | | | $500,000 |
| Cash Proceeds - Lavar's Concert | | | | $2,000,000 | | | | | | | $2,000,000 |
| Revenue From Box Office Ticket Sale | | $0 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | $778,571 | | $5,450,000 |
| Revenue From Livestream Ticket Sale | | | | | | | | | | $4,000,000 | $4,000,000 |
| **Total Inflows** | **500,000** | **-** | **1,278,571** | **2,778,571** | **778,571** | **778,571** | **778,571** | **778,571** | **778,571** | **4,000,000** | **$12,450,000** |
| **Outflows** | | | | | | | | | | | |
| AT&T Deposits | | | $75,000 | $75,000 | | | | | | | $150,000 |
| Livestreaming Deposit | | $40,000 | $35,000 | | | | | | | | $75,000 |
| AT&T Livestream Broadcast Fee | | | | | | | | | | $160,000 | $160,000 |
| Livestreaming Ticket Sales & Broadcast Hosting Fee | | | | | | | | | | $885,000 | $885,000 |
| Artists | $500,000 | | | $385,000 | | | | | | | $885,000 |
| Emergency Deposit To Artist | | | $115,000 | | | | | | | | $115,000 |
| Artist Fee Compliment | | | $300,000 | | | $300,000 | | $400,000 | | | $1,000,000 |
| Artist's Revenue Share On Livestream Revenue | | | | | | | | | | $800,000 | $800,000 |
| Finder's Fee | | | | $40,000 | $30,000 | $30,000 | | | | | $100,000 |
| Venue | | | | $40,000 | | | $40,000 | | | | $80,000 |
| Production Fees | | | | $100,000 | $100,000 | $100,000 | $100,000 | | | | $400,000 |
| Set Design Fees | | | | | $200,000 | | | | | | $200,000 |
| E Ticket Platform Fee ( Box Office ) | | | | $75,000 | | | | | | | $75,000 |
| Decorations | | | | $20,000 | | | | | | | $20,000 |
| Management | | | | $15,000 | | | | | | | $15,000 |
| Marketing | | | | $50,000 | $100,000 | $100,000 | $18,569 | | | | $268,569 |
| Staff | | | | $20,000 | | | | | | | $20,000 |
| Police and Security | | | | | $40,000 | | | | | | $40,000 |
| Government Fees | | $75,000 | | | | | | | | | $75,000 |
| Public Relations and Publication | | | | $10,000 | | | | | | | $10,000 |
| Artist Backstage Dressing Room | | | | | | | | $60,000 | | | $60,000 |
| Professional Fees | | | | $3,000 | | | | | | | $3,000 |
| Miscellaneous | | | | | $50,000 | $50,000 | $50,000 | $50,000 | | | $200,000 |
| **Total Outflows** | **-** | **500,000** | **605,000** | **868,000** | **520,000** | **580,000** | **208,569** | **510,000** | **-** | **1,845,000** | **$5,636,569** |
| **Cashflow surplus (deficit)** | **500,000** | **($500,000)** | **$673,571** | **$1,910,571** | **$258,571** | **$198,571** | **$570,002** | **$268,571** | **$778,571** | **$2,155,000** | **$6,813,431** |
| **Opening Cash Balance** | **-** | **$500,000** | **$0** | **$673,571** | **$2,584,143** | **$2,842,714** | **$3,041,286** | **$3,611,288** | **$3,879,860** | **$4,658,431** | |
| **Closing Cash Balance** | **500,000** | **$0** | **$673,571** | **$2,584,143** | **$2,842,714** | **$3,041,286** | **$3,611,288** | **$3,879,860** | **$4,658,431** | **$6,813,431** | |

## Burnaboy - 8 Week Cash Flow Forecast

| Week and Date | Pre-Start | Wk 1 - Oct 23rd | Wk 2 - Oct 30 | Wk 3 - Nov 6 | Wk 4 - Nov 13 | Wk 5 - Nov 20 | Wk 6 - Nov 27 | Wk 7 - Dec 4 | Wk 8 - Dec 11 | Wk 9 - Dec 17 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inflows** | | | | | | | | | | | |
| Cash Investment - Lavar | $500,000 | | | | | | | | | | $500,000 |
| Cash Investments - Others | | $167,500 | $332,500 | | | | | | | | $500,000 |
| Cash Proceeds - Lavar's Concert | | | | $2,000,000 | | | | | | | $2,000,000 |
| Revenue From Box Office Ticket Sale | | $0 | $454,167 | $454,167 | $908,333 | $908,333 | $908,333 | $908,333 | $908,333 | | $5,450,000 |
| Revenue From Livestream Ticket Sale | | | | | | | | | | $4,000,000 | $4,000,000 |
| **Total Inflows** | **500,000** | **167,500** | **786,667** | **2,454,167** | **908,333** | **908,333** | **908,333** | **908,333** | **908,333** | **4,000,000** | **$12,450,000** |
| **Outflows** | | | | | | | | | | | |
| AT&T Deposits | | | $75,000 | $75,000 | | | | | | | $150,000 |
| Livestreaming Deposit | | | $40,000 | $35,000 | | | | | | | $75,000 |
| AT&T Livestream Broadcast Fee - Estimates | | | | | | | | | | $160,000 | $160,000 |
| Livestreaming Ticket Sales & Broadcast Hosting Fee - Estimates | | | | | | | | | | $885,000 | $885,000 |
| Artists | | $332,500 | | $500,000 | | | | | | | $832,500 |
| Emergency Deposit To Artist | | $167,500 | | | | | | | | | $167,500 |
| Artist Fee Compliment - Estimates | | | $100,000 | $50,000 | | $300,000 | $100,000 | $400,000 | | | $950,000 |
| Artist's Revenue Share On Livestream Revenue | | | | | | | | | | $800,000 | $800,000 |
| Finder's Fee | | | | $40,000 | $30,000 | $30,000 | | | | | $100,000 |
| Venue | | | | $40,000 | | | $40,000 | | | | $80,000 |
| Production Fees | | | | $100,000 | $100,000 | $100,000 | $100,000 | | | | $400,000 |
| Set Design Fees | | | | | $200,000 | | | | | | $200,000 |
| E Ticket Platform Fee ( Box Office ) | | | | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | | | $75,000 |
| Decorations | | | | $20,000 | | | | | | | $20,000 |
| Management | | | | $15,000 | | | | | | | $15,000 |
| Marketing | | | | $50,000 | $100,000 | $100,000 | $18,569 | | | | $268,569 |
| Staff | | | | $20,000 | | | | | | | $20,000 |
| Police and Security | | | | | $40,000 | | | | | | $40,000 |
| Government Fees | | | $75,000 | | | | | | | | $75,000 |
| Public Relations and Publication | | | | $10,000 | | | | | | | $10,000 |
| Artist Backstage Dressing Room | | | | | | | | $60,000 | | | $60,000 |
| Professional Fees | | | | $3,000 | | | | | | | $3,000 |
| Miscellaneous | | | | | $50,000 | $50,000 | $50,000 | $50,000 | | | $200,000 |
| **Total Outflows** | **-** | **500,000** | **290,000** | **973,000** | **535,000** | **595,000** | **323,569** | **525,000** | **-** | **1,845,000** | **$5,586,569** |
| **Cashflow surplus (deficit)** | **500,000** | **($332,500)** | **$496,667** | **$1,481,167** | **$373,333** | **$313,333** | **$584,764** | **$383,333** | **$908,333** | **$2,155,000** | **$6,863,431** |
| **Opening Cash Balance** | **-** | **$500,000** | **$167,500** | **$664,167** | **$2,145,333** | **$2,518,667** | **$2,832,000** | **$3,416,764** | **$3,800,098** | **$4,708,431** | |
| **Closing Cash Balance** | **500,000** | **$167,500** | **$664,167** | **$2,145,333** | **$2,518,667** | **$2,832,000** | **$3,416,764** | **$3,800,098** | **$4,708,431** | **$6,863,431** | |

# EXHIBIT "3"

## INVESTMENT AGREEMENT

**Parties:**

This Investment Agreement (the "Agreement") is entered into on October 26, 2023 between:

**Investor:**    Name: Valor Systems, Inc.  Address: 22539 Canyon Lake Drive, South Canyon Lake, CA 92587

**Company:** TransX Systems, Inc. Address: 475 North Martingale Rd, Suite 360, Schaumburg, IL 60173

**Recitals:**

WHEREAS, the Company will accept investment for Burna Boy concert; and

WHEREAS, the Investor desires to invest funds into the Company for Burna Boy concert; and

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein, the Investor and the Company hereby agree as follows:

**Investment/Return:**

The Investor agrees to invest the sum of $500,000.00 into the Company in exchange for 15% of the profits generated from the Burma Boy concert to be held on December 16th, 2023 (the "Concert"). If the profits from the concert are not sufficient to return the original investment to the Investor, the Company will fund the shortfall.  All payments for shortfall to Investor under this Agreement shall be made within three months of the date of the Concert.  All payments from profits shall be made within two weeks after the Concert.

**Use of Funds:**

The Company will use the investment funds for the following purposes: to invest in the Concert.

**Representations and Warranties:**

The Company represents and warrants that it has the legal authority to issue the equity and that the equity is free and clear of any liens or encumbrances.

The Investor represents and warrants that they have the legal capacity to make this investment and that the funds used for the investment are obtained lawfully.

**Governing Law:**

This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

**Entire Agreement:**

This Agreement constitutes the entire agreement between the parties and supersedes all prior understandings and agreements, whether written or oral.

**Execution:**

IN WITNESS WHEREOF, the parties have executed this Investment Agreement as of the date first above written.

**Investor:  Valor Systems, Inc.**

*Michael Mai*

Michael Mai (Oct 27, 2023 08:03 PDT)

Oct 27, 2023

**Company:  TransX Systems, Inc.**

10/26/2023

# INVESTMENT AGREEMENT - Burna Boy Concert - Valor Systems Inc

Final Audit Report                                    2023-10-27

| | |
|---|---|
| Created: | 2023-10-27 |
| By: | Hung Tran (hung.tran@transxsystems.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAoNUd4X_GQLiG6lZSrKZ3Bk2iawL0jH5R |

## "INVESTMENT AGREEMENT - Burna Boy Concert - Valor Systems Inc" History

📄 Document created by Hung Tran (hung.tran@transxsystems.com)
2023-10-27 - 3:48:12 AM GMT- IP address: 73.211.142.24

📧 Document emailed to mmai2004@gmail.com for signature
2023-10-27 - 3:50:25 AM GMT

📄 Email viewed by mmai2004@gmail.com
2023-10-27 - 3:02:39 PM GMT- IP address: 172.89.213.65

✍ Signer mmai2004@gmail.com entered name at signing as Michael Mai
2023-10-27 - 3:03:37 PM GMT- IP address: 172.89.213.65

✍ Document e-signed by Michael Mai (mmai2004@gmail.com)
Signature Date: 2023-10-27 - 3:03:39 PM GMT - Time Source: server- IP address: 172.89.213.65

✅ Agreement completed.
2023-10-27 - 3:03:39 PM GMT

Adobe Acrobat Sign

# EXHIBIT "4"

| Deposit amount | Date | Whom |
|---|---|---|
| $130,000.00 | 10/27/2023 | Michael |
| $20,000.00 | 11/1/2023 | Michael |
| $35,000.00 | 11/6/2023 | Santiago |
| $50,000.00 | 11/8/2023 | Michael |
| $20,000.00 | 11/9/2023 | Michael |
| $105,000.00 | 11/10/2023 | Michael |
| $13,000.00 | 11/13/2023 | Michael |
| $33,000.00 | 11/13/2023 | Michael |
| | | |
| | | |
| | | |
| $406,000.00 | | |